IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR 08-16-TUC-RCC (CRP) |
| Plaintiff, | **REPORT & RECOMMENDATION** |
| vs. | |
| Raymond Johnson, | |
| Defendant. | |

On October 9, 2013, this matter came before the Court for an evidentiary hearing on a Petition to Revoke Defendant's Supervised Release. (Doc. 49). At the hearing, the Government presented testimony from Marc Robertson and U.S. Probation Officer Andrea Mejia, and Government's Exhibits 1, 2, and 3 were admitted. For the following reasons, the Magistrate Judge recommends that the District Court, after its independent review, find that: (1) Defendant violated the conditions of supervision set out in allegations A(1), B(1), and B(2) of the Petition to Revoke; (2) the Government has failed to establish that Defendant violated the conditions of supervision set out in allegation C(1).

**BACKGROUND**

On August 20, 2008, Defendant entered a guilty plea to the Information which charged violations of 18 U.S.C. §§2252(a)(4)(B), 2252(b)(2), 2253, Possession of Child Pornography. (Doc. 21; *see also* Exh. 1 (Doc. 25 (adopting guilty plea)). On November 6,

2009, Defendant was committed to the custody of Bureau of Prisons for 18 months with credit for time served, followed by a five-year term of supervised release. (Doc. 44). Defendant's term of supervised release began on March 13, 2011. On April 3, 2013, Defendant's conditions of supervised release were modified to include the condition that he reside at a residential reentry center for 180 days. (Doc. 48). Pursuant to the modification order, Defendant moved into New Beginnings Treatment Center in April 2013.

The Government alleges that Defendant violated the following conditions of release: (1) Special Condition No. 1 that he shall attend a sex offender treatment program approved by his probation officer; (2) Special Condition No. 4 that he shall not possess, view, or otherwise use material depicting sexually explicit conduct as defined in 18 U.S.C. § 2256 and shall not possess, view, or otherwise use any other material that is sexually stimulating or sexually oriented or deemed inappropriate by the probation officer; and (3) Special Condition No. 7 that he shall not be in the company of or have contact with children under the age of 18 without prior approval of the probation officer. (Doc. 49).

**TESTIMONY**

P.O. Mejia, who has been Defendant's probation officer since July 5, 2012, testified that on March 13, 2013, she conducted an unannounced visit at Defendant's residence. When she arrived, Defendant's front door was open and she observed Defendant through his screen door sitting on the couch in front of a big-screen television looking at pornographic photos. After entering the residence, P.O. Mejia saw Defendant was looking at a Facebook page which included photos of adult pornography, sexually explicit photos of children, anti-government propaganda and information about how to make a homemade firearm. P.O. Mejia testified that Defendant told her that this was his Facebook page, this was the first time he was looking at this content, it was a surprise to him, and he could not control what people post on his Facebook page. Also found at Defendant's residence were photos of his roommate with a child, child-related DVDs and cartoons, a Japanese sexual comic book, and a bag of children's clothing on the couch which Defendant stated belonged to his roommate who worked as a nanny. P.O. Mejia also found at Defendant's residence an unrated DVD

1  entitled Born Innocent which she testified depicts the trials and tribulations of a 14-year-old
2  girl who was raped, and sexually abused, tortured and tormented. P.O. Mejia testified that
3  Defendant told her he purchased the DVD at a yard sale. P.O. Mejia deemed the DVD very
4  inappropriate for Defendant to possess. At an office visit scheduled as a result of the home
5  visit, Defendant admitted he had been looking at pornographic photos, some of which were
6  of children, and he admitted that the items P.O. Mejia saw were in fact at the residence.
7  Although P.O. Mejia had directed Defendant not to make any additions or deletions to his
8  Facebook page until the office visit, Defendant reported during the office visit that he
9  removed some if not all of the content from his Facebook page. P.O. Mejia testified that
10 Defendant had no explanation why he did this.

11 P.O. Mejia testified that although she could have filed a petition to revoke supervised
12 release based on the March 13, 2013 home visit, she instead offered Defendant the
13 opportunity to participate in a half-way house. P.O. Mejia testified that she offered a
14 modification because at that point, Defendant was being given an opportunity to address
15 issues from a mental health standpoint. It was believed that being placed in a more structured
16 environment and participation in mental health treatment would provide Defendant another
17 opportunity to make progress on supervision. On March 19, 2013, Defendant signed a
18 Waiver of his right to counsel and right to a hearing, and agreed to modify the terms of his
19 supervised release to include the condition that he reside at a residential reentry center for
20 180 days. (Doc. 48). On April 3, 2013, the Court ordered the modification. (*Id.*). In April
21 2013, Defendant reported to New Beginnings Treatment Center.

22 Marc Robertson, a Surveillance Specialist at New Beginnings Treatment Center
23 testified that upon a June 16, 2013 search of Defendant's cell phone, he discovered three
24 emails, each of which contained photos of a woman's vagina. In sum, Defendant's phone
25 contained three separate photos of a woman's vagina. Mr. Robertson is uncertain whether
26 the photos were identical to each other. When confronted with the photos, Defendant
27 admitted to Mr. Robertson that the photos were of vaginas. Mr. Robertson does not know
28 whether Defendant had viewed the photos prior to Mr. Robertson showing them to him.

1    During the June 16, 2013 search of Defendant's cell phone, Mr. Robertson also saw text messages to Defendant from three females. Mr. Robertson testified that the nature of the texts were that Defendant was having conversations with the three females. Mr. Robertson testified that one of the messages was from a woman named Kasha Henning who talked about her children going to camp. Mr. Robertson testified that Ms. Henning indicated that she did not have enough money, she was looking for assistance, and she wanted to thank Defendant for giving her the money to send the kids to camp. Mr. Robertson also testified that later on, in a second series of texts, Ms. Henning thanked Defendant again, and she posted "four images of the kids."

When Mr. Robertson discussed the texts with Defendant, Defendant admitted to talking with Ms. Henning and he also admitted to having sexting conversations with his ex-girlfriend.

Mr. Robertson did not recall the exact content of the texts and does not remember whether they were sexting or contemplating having sex. Mr. Robertson does not know whether the children in the photos are Defendant's children.

P.O. Mejia testified that on June 19, 2013, after having been contacted by New Beginnings, she viewed the three photos of the vaginas on Defendant's cell phone. She also saw many strings of text messages with different women. P.O. Mejia testified that one string of messages revealed that Defendant had given a woman $624 to send her two teenage girls to summer camp with the expectation that he would be advised of their progress and activities they were involved in together with photos. P.O. Mejia testified that she believed Ms. Henning is either Defendant's ex-wife or ex girlfriend.

On June 24, 2013, Defendant was unsuccessfully discharged from a Sex Offense Treatment Program ("SOTP") administered by the Center For Life Skills Development ("The Center"). (Exh. 3). The reason for discharge was

> Failure to progress in SOTP program as evidenced by persistent pattern of denial; inability to assume and display responsibility for offending behaviors; pervasive pattern of violation of probation conditions; persistent pattern of boundary-violation.

(*Id.*). The Discharge Summary also indicated that

- 4 -

1  on June 20, 2013 Mr. Johnson's probation officer contacted the Program Coordinator to inform of more violations to his probation of a sexual nature. At this time due to significant self-regulation issues and continued non-compliance with probation, Mr. Johnson is discharged from SOTP and will face consequences through probation for his actions.

Should he be remanded to return to treatment, he will be accepted back with a behavior contract outlining the expectations for him to be successful in the SOTP.

(*Id.*)

Defendant had participated in the SOTP since March 22, 2011. (*Id.*). The Discharge Summary reflects the "type" of discharge as: "Termination by Referring Agency". (*Id.*)

P.O. Mejia testified that she did not have authority to terminate Defendant's treatment with the Center for Life Skills, only the Center can do that. P.O. Mejia agreed that the Center was going to continue with treatment until she called them on June 20, 2013 to inform them about the additional violations.

**DISCUSSION**

The Court may revoke a term of supervised release if it finds by a preponderance of the evidence that Defendant violated a condition of supervised release.  18 U.S.C. § 3583(e)(3).

**SPECIAL CONDITION NO. 1**

Special Condition No. 1 requires Defendant to attend a sex offender treatment program as approved by the probation officer. The Government alleges that Defendant has violated this condition because on or about June 24, 2013, he was unsuccessfully discharged from sex offender treatment at the Center for Life Skills Development.  (Doc. 49).  A Grade C violation. (*Id.*).

During Defendant's participation in SOTP, the clinician requested two staffing sessions with Defendant and his probation officers to discuss, among other things, Defendant's emotional outbursts, "his consistent disregard for probation conditions specifically prohibiting [him]...from casual sexual encounters[,] and failure to comply with SOTP requirements." (Exh. 3). The evidence of record is that Defendant viewed pornographic photos, some which depicted children, on his Facebook page in March 2013 and that Mr. Robertson found photos

1  of the female genital area on Defendant's cell phone in June 2013. The Discharge Summary
2  evidences Defendant's discharge for failure to progress in the program. The Discharge
3  Summary is clear that as of June 20, 2013, Defendant had engaged in additional violations of
4  a sexual nature, significant self-regulation issues, and continued compliance issues with his
5  supervised release. There is no question that during the 2-plus years Defendant attended
6  SOTP, he exhibited very troubling behavior.

7  Defendant finds significance in the final paragraph of the Discharge Summary stating
8  that he would be accepted back into the program should he be remanded to treatment. Such
9  a statement does not negate that Defendant has been unsuccessfully discharged from the
10 program at this point to "face consequences through probation for his actions." (Exh. 3). The
11 Center is in the business of treating sex offenders. It may well be likely that Defendant may
12 be remanded for treatment at some point. *See e.g.* 18 U.S.C. § 3583(h) (When supervised
13 release is revoked and the defendant is required to serve a term of imprisonment, the court
14 may include a requirement that the defendant be placed on a term of supervised release after
15 imprisonment). Based on the evidence presented, the Government has established by a
16 preponderance of the evidence that on or about June 24, 2013, Defendant was unsuccessfully
17 discharged from sex offender treatment at the Center for Life Skills Development.

18 **SPECIAL CONDITION NO. 4**

19 Under Special Condition No. 4, Defendant shall not possess, view, or otherwise use
20 material depicting sexually explicit conduct as defined in 18 U.S.C. §2256. Additionally,
21 Defendant shall not possess, view, or otherwise use any other material that is sexually
22 stimulating or sexually oriented or deemed inappropriate by the probation officer. The
23 Government alleges that: (1) on or about March 13, 2013, Defendant possessed and viewed
24 pornographic material depicting sexually explicit conduct as defined in 18 U.S.C. §2256; (2)
25 on or about June 16, 2013, Defendant possessed pornographic material depicting sexually
26 explicit conduct as defined in 18 U.S.C. §2256. (Doc 49). Under 18 U.S.C. §2256, "sexually
27 explicit conduct" includes "sexual intercourse" and "lascivious exhibition of the genitals or
28 pubic area of any person". 18 U.S.C. §2256(A)(i), (v). Both allegations are Grade C

violations.  (Doc. 49).

## MARCH 13, 2013 HOME VISIT

P.O. Mejia testified that at the March 13, 2013 unannounced home visit, she came upon Defendant viewing pornography, some of which included children.  P.O. Mejia also found other items of concern at Defendant's residence including DVD's geared toward children, a Japanese sexual comic book, and a DVD of the movie Born Innocent about the rape and sexual abuse of a 14 year-old girl.  When meeting with P.O. Mejia, Defendant admitted to everything P.O. Mejia said she had found.  He also told her that he had no control over what was on his Facebook page, he was surprised to find what had been posted there, and the first time he viewed it was the night of her visit.

Based on the March 13, 2013 home visit, Defendant's conditions of release were modified to add the condition that he reside at a residential reentry center such as New Beginnings.  That modification was ordered by the Court on April 3, 2013.  (Doc. 48).

P.O. Mejia was clear that she informed Defendant that if he did not agree to the modification, she would file a petition to revoke supervised release.  Thereafter, faced with the decision to either go to a half-way house or be subject to another term of imprisonment, Defendant waived his right to a hearing and agreed to go to a residential reentry center.  Despite P.O. Mejia's statement that she would file a petition to revoke if Defendant did not agree to the modification, she has now filed a petition to revoke alleging the same conduct that led to the modification.

In Defendant's case the modification order reflects no specific finding of a violation, or any other reason for the modification.  Nor is a violation necessary to modify conditions of supervised release.  *See United States v. Lowenstein,* 108 F.3d 80, 85 (6th Cir. 1997). Further, 18 U.S.C. §3583(e)(2), governing modification, "does not require a district court to make particular findings...prior to modifying the terms of supervised release." *United States v. Begay,* 631 F.3d 1168, 1171 (10th Cir. 2011) (holding that §3583 does not require the district court to find changed circumstances prior to modifying the terms of supervised release). Instead, the modification provisions of section 3583(e)(2) and Rule 32.1 "are

- 7 -

1  intended to allow courts to respond flexibly to unforeseen changes in the circumstances of a
2  defendant..." as well as new ideas and methods of rehabilitation. *Lowenstein,* 108 F.3d at 85
3  & n.1 (*citing* Fed.R.Crim.P. 32.1 advisory committee's note). *See also Begay,* 631 F.3d at
4  1173 ("a supervisee's rehabilitative needs are often fluid or evolving."). *See also* U.S.S.G.
5  § 7B1.3.(a)(2) (identifying modification, in addition to revocation or extension, as a possible
6  penalty for a Grade C supervised release violation). "The only statutory requirements for
7  modification are that the district court consider the listed §3553(a) factors, follow the
8  procedure outlined in Fed.R.Crim.P. 32.1, and ensure that the modified conditions are
9  consistent with the requirements applicable to all conditions of supervised release." *Begay,*
10 631 F.3d at 1172 ("Although Congress required certain findings prior to termination or
11 revocation of supervised release, it did not require such findings prior to modification.").

12      Because the issue whether Defendant actually violated his supervised release
13 conditions on March 13, 2013 was not adjudicated on the merits, technically, the Government
14 can allege the violation at this point. However, the conduct has already been responded to and
15 addressed albeit not by a formal adjudication in an evidentiary hearing or admission. The
16 clear response to the March 13, 2013 conduct was the modification and this fact should be
17 taken into account when deciding whether the March 13th conduct warrants revocation. In any
18 event, the Government has established by a preponderance of the evidence that Defendant
19 violated Special Condition No. 4 on March 13, 2013 by possessing and viewing pornographic
20 material depicting sexually explicit conduct.

21      **JUNE 16, 2013 CELL PHONE SEARCH**

22      Both Mr. Robertson and P.O. Mejia testified that Defendant's cell phone contained
23 three photos, each depicting a woman's vagina. Although there is no testimony that
24 Defendant in fact viewed the photos, there is testimony that when confronted with them,
25 Defendant admitted they were photos of vaginas. Nor did Mr. Robertson or P.O. Mejia testify
26 that Defendant denied viewing them or denied knowledge that the photos were on his phone.
27 Defendant's conduct on March 13, 2013 adds another layer of context to the June 16th
28 discovery of the photos on his phone. Once again, in June 2013, Defendant is in receipt of

- 8 -

1  visual materials of a sexual nature. Further, the original complaint giving rise to the
2  underlying criminal charges in this action also involved Defendant's possession of
3  pornographic images on his cell phone. (*See* Doc. 1; *see also* Doc. 18 (Information)). Once
4  again, in June 2013, Defendant's cell phone contains visual materials of a sexual nature.
5  Given the evidence presented, the Court finds by a preponderance of the evidence that
6  Defendant has violated Special Condition No. 4 with regard to the June 16, 2013 discovery
7  of photos on Defendant's cell phone depicting sexually explicit conduct.

**SPECIAL CONDITION NO. 7**

Under Special Condition No. 7, Defendant shall not be in the company or have contact with children under the age of 18 without prior approval of the probation officer. "Contact includes, but is not limited to, letters, communication devices, audio or visual devices, visits, or communication through a third party." (Exh. 1, p.3, ¶7). The definition of "Contact" with children also includes "[m]aking contact with a child through another person, such as a teacher, parents, relative, or a friend in an effort to tell or give a child something, or get something from the child...." (Exh. 2, p. 2, ¶3). The Government alleges that on or about June 16, 2013, Defendant "had contact with children under the age of 18, without prior approval of the probation officer, by possessing photographs of children and sending text messages to children. He also gave Kasha Henning $624 to send two of her children to summer camp." (Doc. 49). This allegation is a Grace C violation. (*Id.*).

Mr. Robertson testified that Ms. Henning sent Defendant four photos of "the kids." There is no testimony about the age of "the kids" in the photos or any description that would lend support to such a determination. P.O. Mejia testified that Ms. Henning thanked Defendant for sending her $624 to send her two "teenage girls" to camp. No copies of the photos were submitted into evidence. Nor was the cell phone available at the hearing. The Government has not satisfied its burden of proof on the allegation that Defendant had photos of children under the age of 18 on his cell phone on June 16, 2013.

There is no evidence that Defendant asked Ms. Henning, or anyone else, through text messages to relay any information from him to any children. Nor is there evidence that

1  Defendant sent text messages to any children, and the Government conceded at the hearing
2  that it did not establish this portion of the alleged violation. Therefore, Government has not
3  met its burden of proof with regard to this allegation.

4  There is testimony that text messages reflected that Defendant gave Ms. Henning $624
5  to send her "kids", as Mr. Robertson testified, or "teenage girls", as P.O. Mejia testified, to
6  camp. Giving something to a child through a parent is clearly a violation of Defendant's
7  supervised release and behavior of concern to this Court. However, the evidence of record
8  does not establish that Ms. Henning's children were under the age of 18. The Government has
9  failed to satisfy its burden or proof on this allegation.

10 **RECOMMENDATION**

11  For the foregoing reasons, the Magistrate Judge recommends that the District Court,
12  after its independent review, find that the Government has met its burden of establishing that
13  Defendant violated the conditions of supervised release as set out in allegations A(1), B(1)
14  and B(2) of the Petition to Revoke. The Magistrate Judge further recommends that the
15  District Court, after its independent review, find that the Government failed to meet its burden
16  to establish that Defendant violated the conditions of supervised release as set out in
17  allegation C(1).

18  Pursuant to 28 U.S.C. §636(b), Rule 59 of the Federal Rules of Criminal Procedure,
19  LRCrim 12.1 and LRCiv 7.2(e)(3), any party may serve and file written objections within
20  **fourteen (14) days** after being served with a copy of this Report and Recommendation. No
21  replies to objections will be permitted without leave of the District Court. If objections are
22  filed, the parties should use the following case number: **CR 08-16-TUC-RCC**.

23  Failure to file objections in accordance with Fed.R.Crim.P. 59 will result in waiver of
24  the right to review.

25  DATED this 19th day of November, 2013.

27  _____
    CHARLES R. PYLE
28  UNITED STATES MAGISTRATE JUDGE